(No. 36722.—

COLUMBUS PARK CONGREGATION OF JEHOVAH'S WITNESSES, INC., *et al.,* Appellants, *vs.* THE BOARD OF APPEALS OF THE CITY OF CHICAGO *et al.,* Appellees.

*Opinion filed May 25, 1962.*

Karl M. Milgrom, of Chicago, and Hayden C. Covington, of Brooklyn, New York, for appellants.

John C. Melaniphy, Corporation Counsel, of Chicago, (Sydney R. Drebin and Allen Hartman, Assistant Corporation Counsel, of counsel,) for appellees.

Mr. Justice Solfisburg delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County, on administrative review, affirming the action of the defendant Board of Appeals of the City of Chicago in denying the application of plaintiff Columbus Park Congregation of Jehovah's Witnesses, Inc., for a special use permit pursuant to the Chicago zoning ordinance. Plaintiffs, alleging the unconstitutionality of the ordinance, appeal directly to this court.

Plaintiff corporation, herein sometimes referred to as the Congregation, purchased in 1957 two contiguous store buildings located at 5524-26 West Harrison Street, Chicago, for the sum of $20,000, for the purpose of conversion into a church. The property was in a B4-2 Restricted Service District, and the plaintiff Congregation applied for a special

use permit pursuant to section 8.4-4 of the Chicago zoning ordinance. After hearing the Board of Appeals denied the application for a special use permit, and the circuit court affirmed.

The classification B4-2 under the Chicago zoning ordinance is denominated Restricted Service Districts and according to the preamble is "designed primarily to furnish areas served by Restricted Retail Districts with a wide variety of necessary services (and goods) incompatible with the uses permitted in the Restricted Retail Districts and so not allowed therein."

Forty-five different uses are permitted in B4-1 to B4-5 districts in addition to all uses permitted in B2, Restricted Retail Districts. The additional uses permitted in B4 districts include such diverse uses as dance halls, service stations, crematories, mausoleums, laundries, recreation buildings, pawn shops, taverns, trade schools and libraries. Among the uses permitted in B2 districts, and therefore in B4, are "Clubs and Lodges (non-profit), Fraternal, or Religious Institutions."

A church is not a permitted use in either B2 or B4 districts, but is denominated a special use which may be allowed in B4 districts only pursuant to the variation provisions of article 11 of the ordinance. Article 11 provides in part as follows:

"11.10-4 Standards. No special use shall be granted by the Zoning Board of Appeals unless the special use:

"(1) a. is necessary for the public convenience at that location;

b. is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

"(2) will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; * * *."

The property sought to be used as a church by plaintiffs

is located in a block containing 22 stores among which are a tavern, liquor store, service station, delicatessen, barber shop, laundromat, hardware store, shoe repair shop, pastry shop, grocery store, drug store, restaurant and beauty shop. Across the street there is a large Greek Catholic Church and a parochial school. The area behind the subject property is zoned residential.

At the hearing before the Board of Appeals it appears that the plaintiff congregation was assigned this territory in Chicago for their ministry. They were presently holding their meetings in a building of another congregation outside their territory. While the congregation had tried to purchase property in other localities, they found none suitable until they purchased this vacant store building which met the needs of the congregation. The congregation consists of 82 persons, and only 17 own automobiles. The average attendance at their meetings is between 55 and 60. The proposed meetings of the congregation would be on Sunday afternoon and evening; Tuesday evening and Thursday evening. Off-street parking is provided for eight automobiles, which is more than the minimum fixed by ordinance.

Harrison Street, on which the subject property is located, is of ordinary width, but carries an exceptional amount of traffic during ordinary business hours and it is difficult to find a parking place at these times. During the times of the plaintiff congregation's proposed meetings, the traffic is lighter and the parking problem less acute.

Twenty-three persons in the neighborhood filed written objections to the application and five appeared to testify at the hearing. Abe Brodsky owned a two-flat in the residential area behind the church property, and objected because, with the proposed use, "the property value is going to drop there because it brings in all kinds of strange people in the section, and people like a residential neighborhood to be quiet."

Elmer Jezek, who owned the hardware store next to the proposed location, objected because he didn't "think it would help business." He further ventured the opinion that if churches would help business, they would be in large shopping centers, and "They would put a bunch of churches right in the middle of it [Hillside Shopping Center] if it would help business."

Rose DiCicilia, who owned a three-flat in the residential area behind the property, feared that the use of parking facilities would lessen the value of her property. An attorney also testified that the proposed use would lessen the value of an apartment in the neighboring residential area because of traffic in the alley behind the church and a lack of parking. An owner of a bungalow also feared that the proposed church would lessen the value of his property.

Plaintiffs presented the testimony of two real-estate experts who testified that the proposed use would not substantially affect the value of neighboring property. Defendants also introduced the testimony of two qualified real-estate experts. One felt that by breaking the continuity of the business block, neighboring business property values would be lessened by 15 per cent. Defendants' other expert, James J. Curtis, was of the opinion that rental and sales values would be depreciated because there was a little colony of merchants in the block who sold their own peculiar type of food. He testified that a church would be out of place in almost all business districts.

The zoning administrator had previously denied the application for a special use on the ground that the "proposed improvement does not conform with the requirements of the Chicago Zoning Ordinance." The zoning Board of Appeals, after the hearing above referred to, denied the application, finding "that the proposed church is not necessary for the public convenience at the location in question," and that such use "will cause substantial injury to the value

of other property in the neighborhood." Upon administrative review the circuit court of Cook County affirmed the decision of the board.

On this appeal plaintiffs contend first that the Chicago zoning ordinance as construed and applied to the facts in this case is unconstitutional in that it denies plaintiffs their property without due process of law, and denies them freedom of worship. Secondly, they contend that the refusal of the special use permit in this case was arbitrary and capricious.

Defendants insist that the ordinance is valid on its face; that its application to the facts of this case did not deprive plaintiffs of any constitutional rights; and that the denial of the special use permit was not arbitrary or capricious.

While the parties have not referred us to any Illinois case specifically considering the granting of a special use permit to a church, the general rules concerning zoning have been firmly established by our opinions. We agree with the defendants that zoning is primarily a legislative function, that the burden is upon one attacking the validity of the ordinance, and that the decision of the zoning authority is ordinarily subject to review only for the purpose of determining if the enactment constitutes an undue invasion of private rights without a reasonable relation to the public health, morals, safety and welfare. (*Cosmopolitan National Bank* v. *City of Chicago,* 22 Ill.2d 367; *County of Cook* v. *Glasstex Co.* 16 Ill.2d 72.) We also agree that the "special use" technique utilized in the Chicago zoning ordinance is a permissible drafting method in a proper case. *Gorieb* v. *Fox,* 274 U.S. 603, 607, 71 L. ed. 1228; *Kotrich* v. *County of Du Page,* 19 Ill.2d 181, 184.

However, every owner has a right to use his property in his own way, subject only to the restraint necessary to secure the common welfare. (*Village of La Grange* v. *Leitch,* 377 Ill. 99.) Zoning laws, which limit that right, are enacted pursuant to the police power of the State, and when

that power is delegated to a city or village to permit them to interfere with property rights by means of a zoning ordinance, such ordinance, to be valid must have a real and substantial relation to the public health, safety, morals or general welfare. (*Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91.) As we recently stated in *Liebling* v. *Village of Deerfield,* 21 Ill.2d 196: "It has long been established that zoning classifications must bear some real and substantial relationship to the public welfare, health or safety; and where the gain to the public is small as compared to the hardship imposed upon the owner, no valid basis for the exercise of the police power exists. *Atkins* v. *County of Cook,* 18 Ill.2d 287; *La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40."

The foregoing principles apply to the imposition of zoning restrictions on the property rights of any owner. However, in the case at bar the impact of the ordinance prevents plaintiffs from the practice of their religion in this particular location, and so serves in some degree to limit the free exercise of religion. While we do not doubt that the location of churches can be regulated in a proper case, (See *Corporation of the Presiding Bishop* v. *City of Porterville,* 90 Cal. App. 2d 656, 203 P.2d 828; *Miami Beach United Lutheran Church* v. *City of Miami Beach,* (Fla. 1955) 82 So. 2d 880,) the right of freedom of religion, and other first amendment freedoms, rise above mere property rights. They rise "far above public inconvenience, annoyance or unrest." (*Terminiello* v. *City of Chicago,* 337 U.S. 1, 4, 93 L. ed. 1131.) As the United States Supreme Court stated in a case involving the door to door activity of Jehovah's Witnesses: "Freedom of religion has a higher dignity under the Constitution than municipal or personal convenience." *Martin* v. *City of Struthers,* 319 U.S. 141, 151, 87 L. ed. 1313.

It has been also strongly doubted, since Mr. Justice Stone's famous footnote in *United States* v. *Carolene Prod-*

*ucts Co.* 304 U.S. 144, 152, 82 L. ed. 1234, that legislation regulating first amendment freedoms has the normal strong presumption of validity. See *Thomas* v. *Collins,* 323 U.S. 516, 529-530, 87 L. ed. 430.

We must proceed to analyze the record presented in the light of these principles. The evidence is clear that plaintiffs have obtained a suitable and convenient store-front location within the area they seek to serve by the exercise of their religion. The congregation is small and does not hold meetings during normal business hours. Only 17 automobiles are owned by members of the congregation.

The denial of their right to use the subject premises for religious purposes is grounded upon two considerations. The first is the fear that a small church will increase the already congested parking and traffic condition. It must be noted that almost all of the witnesses who voiced this objection resided in neighboring residential locations where churches of any size are permitted under the ordinance. None considered the small size of the congregation and the times of their meetings.

It is apparent that churches in any location will add to traffic and parking congestion during hours of worship. However, there is no evidence in the record before us to show any danger of a traffic or parking problem that would justify this particular use of the police power to limit the fundamental right of freedom of worship. (*Diocese of Rochester* v. *Planning Board,* 1 N.Y.2d 508, 136 N.E.2d 827; *Board of Zoning Appeals of Decatur* v. *Jehovah's Witnesses,* 233 Ind. 83, 117 N.E.2d 115, 120.) We, therefore, hold that to deny plaintiffs the right of worship at this location, upon the speculative fears of traffic congestion, bears no reasonable relation to the general health, safety and welfare.

The second basis for denial of this special use is the detrimental effect of a church in a solid business block. While there is a conflict in the opinions of real-estate ex-

perts on this question, the Board of Appeals could have found from the testimony that the value of adjacent stores would be depreciated by this special use. The testimony supporting such a conclusion was based on the break in the continuity of the line of small businesses. It was implicit in the testimony, of at least one of defendants' witnesses, that a church would always depreciate neighboring property.

Such testimony ignores the fact that such business continuity would likewise be interrupted by a dance hall, crematory, mausoleum or trade school, all uses permitted in this B4 district. We are unable to see how the use as a church is more harmful to adjacent stores than the aforementioned permitted uses.

The arguments advanced by defendants, if followed, would be sufficient to bar all religious worship from the commercial areas of Chicago. Such arbitrary prohibition is not consonant with the constitutional guarantees of freedom of religion, nor do we believe it is consistent with the intent of the ordinance.

Based upon the evidence in this record, we believe that the denial of a special use permit to plaintiffs is arbitrary and capricious and bears no substantial relation to the public health, safety and welfare. Plaintiffs have, therefore, been denied their constitutional rights in this case.

We have reached this conclusion on the basis of the evidence presented, and therefore need not consider other allegations of unconstitutionality. Accordingly the order of the circuit court of Cook County is reversed and the cause remanded, with directions to order the issuance of the special use permit to plaintiffs.

*Reversed and remanded, with directions.*