FAMILY CHRISTIAN FELLOWSHIP *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF WINNEBAGO, Defendant-Appellee (Kent Mallquist *et al.*, Intervenors-Appellees).

Second District   No. 2—86—0158

Opinion filed December 31, 1986.—Rehearing denied February 11, 1987.

John W. Mauck and Richard C. Baker, both of Friedman & Mauck, of Chicago, and Donald A. Manzullo, P.C., of Oregon, for appellants.

Daniel D. Doyle, State's Attorney, of Rockford (Gary L. Kovanda, Assistant State's Attorney, of counsel), for appellee County of Winnebago.

James M. Hess, of Pedderson, Menzimer, Conde, Stoner & Killoren, of Rockford, for other appellees.

JUSTICE DUNN delivered the opinion of the court:

This is a declaratory judgment action brought by plaintiff Family Christian Fellowship (FCF), an Illinois religious corporation founded in 1975 whose primary ministries are worship and education, against defendant, County of Winnebago (county). FCF sought a judgment declaring that the county should have allowed its application for a special use permit to use a parcel of property it owned in Winnebago County for religious and educational purposes. Several neighborhood property owners were permitted to intervene as defendants. The trial court found that FCF could use the property for a school limited to grades K-8, but could not use the property for church or high school purposes.

On July 19, 1985, FCF purchased the former Marsh School property from the Rockford board of education for $450,000. The property consists of approximately 12 acres improved by an over 62,000-square-foot building containing 30 classrooms, a gymnasium, a library, and other rooms. The property is zoned R-1, residential. Churches and educational institutions are permitted, provided a special use permit is obtained from the county. Single-family residences surround the property on the north, east, and west side; the south side of the property abuts a large public park.

Prior to FCF's purchase of the property, the building had been used as a public school until the school was closed in the spring of

1978. In the fall of 1977, the school had an enrollment of approximately 500 seventh and eighth graders, and approximately 80 first through sixth graders. The junior high school students came from an area covering over 25 square miles. In November 1979, the school board leased 5,500 square feet of the building to the Rockford Public Library for a branch library. Another 10,000 feet of the building was leased to a private school. Special use permits were granted for each of these uses. In addition, the building was also made available for other minor uses. The school district attempted to sell the building in 1983, but received only one bid for $50,000, which it rejected.

On the same day FCF purchased the property, they applied for a special use permit to use the property for a church, preschool, grade school, and high school. FCF proposed to use the property for church services on Sundays, for school purposes during the week nine months of the year, and for some weekend seminars during the year. Two church services would be conducted, a morning service attended by approximately 550 people transported by approximately 125 cars and an evening service attended by some 200 people. The school's enrollment at the time of trial was 139 students, 112 in grades K-8 and 27 in grades 9-12, and had a faculty of 20. FCF hopes for an eventual enrollment of 280 students, including a high school enrollment of 80. The school operates during normal hours. Evening school activities would amount to 17-20 evenings annually. The weekend seminars would start on Friday evening, run Saturday, and conclude with the Sunday morning services. In 1985, there were 4 such seminars; in 1984, there were 10 to 12.

The zoning and planning committee recommended by a 5-3 vote that FCF be granted the special use permit. However, the zoning board of appeals denied the permit by a 4-2 vote on account of surrounding property value concerns, increased traffic, and potential drainage problems. The county board denied the permit by a vote of 13-12.

On appeal, FCF raises two principal arguments: (1) the Winnebago County zoning ordinance is a facially unconstitutional restriction of the freedoms of religion, speech, and assembly; and (2) the denial of the special use permit was arbitrary, capricious, and unreasonable and was against the manifest weight of the evidence. Because we find that the latter argument is dispositive of this appeal, we need not address the constitutionality argument nor the remaining arguments raised by FCF. *Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 73, 182 N.E.2d 722.

■■ ■ Judicial review of typical challenges directed at zoning re-

strictions imposed by legislative bodies is governed by well-established rules. There is a presumption of validity in favor of the action taken by the legislative body because zoning is mainly a legislative function. This presumption is not overcome unless the property owner shows by clear and convincing evidence that the ordinance as applied to him is arbitrary and unreasonable and bears no substantial relation to the public health, safety, and welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899; *National Pride Equipment, Inc. v. Village of Niles* (1982), 109 Ill. App. 3d 639, 644, 440 N.E.2d 1053.) However, the strong presumption of validity applicable in the usual case is significantly diminished when, as is the case here, the impact of the zoning decision in some way limits the free exercise of religion. The right of freedom of religion and other first amendment freedoms rise above mere property rights and far outweigh considerations of public inconvenience, annoyance, or unrest. *Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 71-72, 182 N.E.2d 722; *Lubavitch Chabad House of Illinois, Inc. v. City of Evanston* (1982), 112 Ill. App. 3d 223, 227, 445 N.E.2d 343, *cert. denied* (1983), 464 U.S. 992, 78 L. Ed. 2d 681, 104 S. Ct. 485.

■ The relevant factors that the court may consider in determining the validity of a zoning decision are as follows: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65; see also *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 111-12, 324 N.E.2d 406.) In addition, the compatibility of the proposed use with an existing comprehensive plan is also a factor to be taken into account. *City National Bank v. County of Kendall* (1986), 140 Ill. App. 3d 933, 936, 489 N.E.2d 486; *Wilson v. County of McHenry* (1981), 92 Ill. App. 3d 997, 1001, 416 N.E.2d 426.

■ No one factor is controlling, and the findings of the trial court in reviewing a special use permit are not to be disturbed unless they are against the manifest weight of the evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 47-48, 145 N.E.2d 65;

*Lubavitch Chabad House of Illinois, Inc. v. City of Evanston* (1982), 112 Ill. App. 3d 223, 226, 445 N.E.2d 343, *cert. denied* (1983), 464 U.S. 992, 78 L. Ed. 2d 681, 104 S. Ct. 485.

Although the trial court declined to make specific findings of fact regarding FCF's lack of compliance with the applicable standards, our review of the evidence addressing the factors to be considered indicates that diminution in value of the surrounding residences, traffic problems, and drainage problems if on-site parking were added were the significant factors disputed by the parties. In determining that the trial court's partial denial of the proposed church/school use was against the manifest weight of the evidence, our analysis will encompass the pertinent standards outlined above with primary emphasis on the elements in dispute.

The property purchased by FCF is surrounded by single-family homes on the north, east, and west sides. A public park borders the southern edge of the property. The property is located in an area zoned for residential use.

The zoning restrictions in effect when FCF's special use application was denied by the county board substantially diminished the value of the subject property. Parker Moyer, a real estate appraiser, concluded that under an R-1, residential classification with the limited special uses already allowed, the property had little or no value at all. Moyer added, however, that if a special use permit were granted allowing the building to be fully utilized to its highest and best use, *i.e.*, one of the special uses permitted, the property would be worth $622,500.

As to the effect on the surrounding property values if the special use permit were granted in full, Parker Moyer and John Combs, testifying on behalf of FCF, concluded that the proposed use would not have a significant effect on the value of the nearby residences. Moyer analyzed sales of homes in five comparable areas in the Rockford area and compared property values when the Marsh School was in full operation. John Combs, a real estate broker, analyzed comparable sales and current market statistics. Willard Davidson, an appraiser called by defendant, opined that the surrounding residences would lose 2% to 10% of their value, depending on location, if the proposed use were allowed. Davidson did not analyze sale prices for homes in comparable areas or market values when the Marsh School was in full use.

■ Evidence of diminution in value of nearby property does not necessarily preclude a proposed use. (*Jeisy v. City of Taylorville* (1980), 81 Ill. App. 3d 442, 450, 401 N.E.2d 627.) In *Van Duyne v. City of Crest Hill* (1985), 136 Ill. App. 3d 920, 924-25, 483 N.E.2d 1307, a defense witness estimated that the proposed use would result

in a 10% "across the board" depreciation on nearby homes. As in the instant case, the testimony of the defense witness was undermined by his own testimony and the testimony of the plaintiff's expert witnesses who stated that the proposed use would have no impact on the values of surrounding properties. Despite the testimony as to diminution of value of the nearby residences, the court in *Van Duyne* found that the plaintiff was entitled to use the property for the proposed use. Here, the trial court did not specifically find that diminution in value of surrounding properties justified denying the proposed church/ school use. (*Cf. LaGrange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 388 N.E.2d 388.) Moreover, because this case involves a proposed religious use, the presumption of validity of the legislative determination is significantly diminished. In view of the inconclusive nature of the testimony addressing diminution in value to the nearby residences and the important constitutional rights involved, denying the proposed church/school use on this basis is unwarranted.

Regarding health, safety, morals, and general welfare concerns, the main objections of nearby residents were increased traffic and added drainage problems potentially resulting from the addition of required on-site paved parking. FCF acknowledged that the church services would increase traffic flow on Sundays. As to the traffic generated by the proposed school, Dr. William Berg, a civil engineer specializing in transportation engineering and city planning, stated that assuming the proposed school had 600 students, the total traffic in the neighborhood would increase by 5% compared to the total traffic generated when the Marsh School was operating in the 1970's. Berg's assumption of a 600-student enrollment represents over four times the current enrollment and over twice the projected enrollment of 280 students. David Noel, director of the Winnebago County Department of Planning and Economic Development, concluded that the traffic generated by the prior school use and the proposed school use would be substantially identical. Phillip Bus, a city and county planner for Kane County, testified that there would be no substantial impact on traffic in the neighborhood unless the total traffic in the area increased by 15% to 20%.

William Lorence, superintendent of highways for Winnebago County, testified that the traffic generated by the proposed use would overburden roadways which are in fair to poor condition and accelerate the deterioration of the roadways in the neighborhood. Dr. Berg did not envision any adverse effect from the proposed use on the rate of pavement deterioration. Lorence and Noel agreed that any traffic problems could be controlled by usual hazard control measures.

While traffic is a factor in zoning cases, ordinarily it is not accorded much weight because traffic is a problem in most areas and is constantly getting worse. (*La Salle National Bank v. Village of Skokie* (1962), 26 Ill. 2d 143, 146, 186 N.E.2d 46; *Furling v. County of Sangamon* (1984), 126 Ill. App. 3d 851, 856, 467 N.E.2d 646.) Compared to the traffic generated when the subject property was in full use as a school, the amount of increased traffic generated by FCF's proposed use, if any, is relatively insignificant. Consequently, any deterioration of the roadways caused by a resumption of full use of the property would be consistent with the deterioration caused by prior full uses. Any necessary improvements on the surrounding roadways or traffic hazard control measures can be accomplished by proper action on the part of the highway authorities. (*La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 394-95, 369 N.E.2d 505.) As to the traffic generated by the proposed church use, it is well recognized that churches in any location will add to traffic congestion during hours of worship and absent evidence demonstrating any danger caused by the potential traffic problems, this factor does not justify exercising the police power to limit the right of freedom of religion. (*Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 72, 182 N.E.2d 722; *Hope Deliverance Center, Inc. v. Zoning Board of Appeals* (1983), 116 Ill. App. 3d 868, 873-74, 452 N.E.2d 630.) Under the circumstances of the present case, traffic concerns provide an insufficient basis for denying the proposed use.

Potential drainage problems caused by the proposed use were also disputed by the parties. The parking regulations applicable to the proposed church/school use necessitate the addition of an on-site paved parking area. While the adequacy of existing parking was contested, the record indicates that approximately one acre of FCF's property will have to be paved to comply with the applicable regulations. Property for that purpose is available, and FCF has agreed to comply with the parking requirements.

However, concomitant with the addition of an on-site paved parking area is the increased volume of surface water runoff. Several residents testified they had water runoff problems during heavy storms. Richard Mohaupt, a civil engineer and the superintendent of public works for Winnebago County, stated that a storm water detention facility for a one-acre paved parking area could be constructed that would comply with the storm water control ordinance and result in no measurable increase in water runoff onto downstream properties. Furthermore, both Mohaupt and Phillip Bus testified that a detention facility could be engineered and located on the property which would slow

down the speed of storm water runoff from the site. Joseph Zavagnin, a civil engineer and FCF member, testified that there were two specific water detention plans FCF could install to comply with the county regulations.

From the testimony adduced at trial, it is apparent that a drainage system for a one-acre on-site paved parking area could be engineered to avoid compounding the already existing drainage problems. The speculative fears of neighboring residents are unwarranted and insufficient to rebut the expert testimony presented at trial. (*La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 394, 369 N.E.2d 505.) Because any potential additional drainage problems caused by FCF's proposed use can be controlled, the special use permit could not have been denied on this basis.

As to the remaining factors, the subject property is not suitable for the existing residential zoning. The cost to demolish the existing structure and develop it for residential purposes is economically unfeasible.

The Marsh School has been closed since the spring of 1978. Since then, less than a quarter of the building has been utilized. The school board's prior attempts to sell the property have been unsuccessful. The property was in disrepair at the time FCF purchased it.

Finally, the comprehensive plan adopted by Winnebago County in 1980 designated the property purchased by FCF as public/quasi-public. Churches and private schools were included in the examples of uses falling within this designation.

●8 Based on the record before us, we conclude that the denial of FCF's proposed church/school use was arbitrary and unreasonable and bears no substantial relation to the public health, safety, and welfare. The detrimental effect, if any, on the community does not justify using the police power to limit FCF's right of freedom of worship and its use of the property for an accompanying school.

For the foregoing reasons, we reverse the judgment of the circuit court of Winnebago County insofar as it denied the full church/school use proposed by FCF and remand the cause to the circuit court with directions to order the issuance of the special use permit as requested to FCF.

Reversed and remanded.

HOPF and UNVERZAGT, JJ., concur.