**ST. CROIX DEVELOPMENT, INC., et al., Respondents,**

v.

**CITY OF APPLE VALLEY, Appellant.**

No. C3–89–649.

Court of Appeals of Minnesota.

Oct. 10, 1989.

Review Denied Dec. 1, 1989.

Gerald S. Duffy, Siegel, Brill, Greupner & Duffy, P.A., Minneapolis, for respondents.

Terence P. Durkin, James F. Sheldon, McMenomy & Severson, P.A., Apple Valley, for appellant.

Heard, considered and decided by PARKER, P.J., and KALITOWSKI and SHORT, JJ.

## OPINION

PARKER, Judge.

The City of Apple Valley appeals a trial court judgment ordering it to rezone the subject property according to respondent developers' petition for an amendment to the city's zoning ordinance. The developers (St. Croix Development, Inc., Wellington Management, Inc., Steven Wellington and Mary McNellis), purchasers of two adjacent parcels of land in Apple Valley, brought suit for a declaratory judgment after the city denied their request for rezoning. On appeal the city argues that the trial court erred in finding that (1) the developers were proper parties to the petition for rezoning, and (2) the city's denial of the rezoning request was arbitrary and capricious. We reverse on the latter ground.

## FACTS

In February 1988 Steven Wellington, Mary McNellis and Steven Cheney executed a contingent purchase agreement for two undeveloped parcels of land in the City of Apple Valley. Cheney owned the subject property. Wellington and McNellis, officers of two development companies, intended to develop the property as the Palomino Townhouse Project. Wellington, McNellis and McNellis' husband are the sole shareholders, officers and directors of their development corporations—Welling-

ton Management, Inc., and St. Croix Development, Inc.

The subject property is adjacent to the intersections of County Road 38, Cedar Avenue and Pennock Avenue. While the property is zoned R–1A (large lot, single-family), the city's comprehensive land-use plan designates the property as D–2 (residential, 1–6 units per acre) and D–3 (residential, 5–12 units per acre). The use plan assumes the existence of planned infrastructure, including roads. Although the plan shows that County Road 38 is a through street continuing west of the subject property, the county has not completed this road and there are no plans to construct this portion of the road before 1991. The county has not yet set aside funding for County Road 38.

In January 1988 the developers contacted city staff regarding a proposed development of the property. They worked with the city planning commission and made modifications as requested. In May 1988 they submitted to the city a petition to rezone the property "from R–1A to M–4 to allow up to 11 units per acre according to the land use plan and approval of the preliminary plat for same site." The application for rezoning listed the petitioners as St. Croix Development, Inc., and Wellington Management, Inc. Wellington and McNellis signed the petition and Cheney signed as "owner if other than Petitioner."

The city held two public hearings on rezoning for the Palomino Townhouse project. At the first hearing, neighbors to the proposed project complained that property values of their single-family homes would decline because of the high-density development and that the project would exacerbate an existing traffic problem on Pennock Avenue.

Complaints about traffic problems on Pennock Avenue predated the proposed project. In 1987, in response to citizen complaints, the city commissioned a traffic study of Pennock Avenue. At the time of the first public hearing on the project, the traffic engineer had not yet reported the study results to the city. When he finally presented an oral report to the council and city staff, the engineer confirmed the fact that there was a safety problem on Pennock Avenue.

The study showed that an average of 1,900 cars per day were using a section of the avenue which was designed to handle safely only 800 to 1,000 cars per day. Although the problem area is approximately one-half mile from the proposed townhouse project, the traffic study showed that cars entering and exiting Pennock Avenue at the western end of County Road 38 (Zoo Road) were a substantial cause of the traffic problem. This intersection is adjacent to the proposed Palomino project. The traffic engineer advised the city that there was no engineering solution for the problem on Pennock Avenue until such time as County Road 38 is completed west past Pennock. These facts are substantiated in the full written Pennock Avenue Traffic Report.

After the engineer's presentation to the city council, a city staff member directed him to prepare an additional report on the impact of the Palomino Townhouse project on Pennock Avenue. In his report the engineer assumed a project density of 6.4 units per acre and completion of County Road 38 west of Pennock Avenue. He provided the city with a letter report which concluded that the traffic impact from the project would be "insignificant." The engineer advised the city that if the project were designed to prohibit traffic from exiting the project onto Pennock Avenue, it would account for only 25 cars per day more than a development with a density of 2.5 units per acre.

Based on the engineer's report, the city staff recommended city council approval of the rezoning request. The staff changed their recommendation when it was brought to their attention that the engineer's report was based on incorrect assumptions, i.e., the completion of County Road 38 and an incorrect density factor.

The city council denied the developers' rezoning request and adopted the following findings:

1. Existing Comprehensive Plan designations are currently under review

by the City as directed by the City Council on January 1, 1988. This review will not be complete until some time after January 1, 1989.

2. The existing Comprehensive Land Use designations are based upon saturation development of the City and assume that all associated infrastructure improvements are complete. Construction of new County Road #38 adjacent to the subject area will not be complete until after 1990.

\* \* \* \* \* \*

5. The predominant developed land use surrounding the subject area is that of detached single family homes under an "R–1C" zoning designation. Neighborhood sentiment expressed during the public hearing process expressed concern over the appropriateness and compatibility of a proposed townhouse use in an area lacking a complete roadway network.

\* \* \* \* \* \*

9. Development of the site under the standards of "M–1" and "M–2" zoning designations is premature.

\* \* \* \* \* \*

The developers brought an action for declaratory judgment in Dakota County District Court. The court determined that the record of the city's rezoning proceeding was inadequate and allowed the city to augment the record at trial.

The record of the proceedings prior to trial consisted of maps, staff reports, meeting agenda, correspondence, a traffic report, an eight-page synopsis of a public meeting, and the resolution and findings as adopted by the city council when it voted to deny the rezoning request. Because the city did not keep contemporaneous reports or recordings of meetings, it augmented the record at trial to include depositions and testimony of staff, council members and the traffic engineer. It is not clear whether the full written Pennock Avenue Traffic Study was available to the council prior to its vote; it was added to the record at trial.

The trial court found that (1) the developers had standing to initiate the zoning petition, and (2) the city failed to show it had a rational basis for denying the developers' rezoning request. The city appeals from the judgment ordering it to rezone the subject property according to the developers' petition and awarding the developers costs and disbursements.

## ISSUES

1. Did the developers have standing to petition the city to rezone property when they, as purchasers, signed the petition and the fee owner joined them in the petition?

2. What is the proper standard of review of a local governing body's rezoning decision when the trial court hears additional evidence on the issues that were before the city council?

3. Did the city council have a rational basis for denying the rezoning petition?

## DISCUSSION

### I

The city argues that the developers were not proper parties to the petition to rezone and therefore lacked standing to petition the city to amend the zoning ordinance. It claims that Wellington Management and St. Croix Development, the named petitioners on the rezoning application, had no ownership interest in the property because Wellington and McNellis had signed the purchase agreement in their individual capacity and not as representatives of their corporations.

Minn.Stat. § 462.357, subd. 4 (1986), states that "[a]n amendment to a zoning ordinance may be initiated by the governing body, the planning agency, or by the petition of affected property owners as defined in the particular zoning ordinance." The city's zoning ordinance similarly allows an affected property owner to petition the city for rezoning. Apple Valley code § A1–73.

The authority of Wellington and McNellis to enter a purchase agreement on behalf of their corporations is not an issue. They are the sole shareholders and officers of

their corporations, they signed the petition, and they were joined on the petition by Cheney, the fee holder of the property. Because all interested parties were signatories to the petition, we agree with the trial court's finding that when the owner of property joins with buyers in an application for rezoning, there is sufficient compliance with the owner/petitioner requirement to petition the municipality for an amendment to its zoning ordinance.

## II

■ This court must make an independent examination of the zoning agency's record and decision without according any special deference to the same review conducted by the trial court. *Northwestern College v. City of Arden Hills*, 281 N.W.2d 865, 868 (Minn.1979). Part of the record here was developed at trial. Therefore, the developers claim that this court should apply a different standard of review from that set forth in *Northwestern*.

The trial court determined that because the record of the city's rezoning action did not include contemporaneous recording of the city's proceedings, the record was insufficient. The court ruled that the city could augment its record at trial and that the city would therefore carry the burden of proof to show that it had a rational basis for denying the rezoning petition. *See Swanson v. City of Bloomington*, 421 N.W.2d 307, 312 (Minn.1988).

The developers argue that when a district court reviews a city zoning decision and hears additional evidence at trial, this court should not set aside the district court's findings of fact unless they are clearly erroneous. To adopt the developers' position would effectively convert the district court to a court of first impression and undermine the supreme court's mandate that the appellate function in rezoning cases is to review the decision of the local governing body, not that of the district court.

■ The fact that the district court heard additional evidence does not affect the standard of review. When the record on review is augmented by new or additional evidence received at trial relevant to the issues raised and considered by the city council, this court must then conduct an independent review of the record as augmented. *City of Barnum v. County of Carlton*, 394 N.W.2d 246, 250 (Minn.Ct. App.1986). While the "clearly erroneous" standard may apply when there is no record from the municipality and the trial court considers evidence that was not relevant to issues before the municipality and conducts a trial de novo, such is not the case here. *See id.*, n. 1.

The trial court conducted a review of the city's record, which included maps, staff reports, meeting agenda, correspondence, a traffic report, a synopsis of a public meeting and the resolution and findings as adopted by the city council when it denied the rezoning petition. Except for the lack of minutes from the city council meetings, the city's record was sufficient for review. *See Honn v. City of Coon Rapids*, 313 N.W.2d 409, 413 (Minn.1981).

To remedy the deficiency in its record, the city presented testimony from city staff, council members and the traffic expert. Their testimony referred to the traffic problems on Pennock Avenue, an issue which was before the city council when it made the decision to deny the rezoning request. We conclude that the trial court did not conduct a trial de novo and that the testimony and other evidence presented at trial was substantially considered by the council when it denied the rezoning petition.

## III

■ The standard of review in all zoning matters is whether the local authority's action was reasonable. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn.1983). This standard is variously expressed as: is there a "reasonable basis" for the decision; is the decision "arbitrary and capricious;" or, is the decision "reasonably debatable?" *Honn*, 313 N.W.2d at 417.

■ The court's authority to interfere in the management of municipal affairs

should be limited and sparingly invoked. *White Bear Docking and Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 176 (Minn.1982). The mere fact that a court might have reached a different conclusion, had it been a member of the council, does not invalidate the judgment of the city officials if they acted in good faith and within the broad discretion accorded them by statute and ordinance. *Id.*

The developers contend the city has the burden of showing there is no substantial evidence reasonably tending to support or sustain the trial court's findings. *Costello v. Johnson*, 265 Minn. 204, 211, 121 N.W.2d 70, 76 (1963); *Wellens v. Thuening*, 393 N.W.2d 302, 304 (Minn.Ct.App.1986). As we understand their argument, they also contend that unless each of the ten recorded reasons for the city's decision is legally sufficient and supported by facts, the city cannot meet its burden here. Such a standard cannot be correct; the burden would destroy the "rational basis" standard of review.

The city may prevail on review if, after examining the record, this court determines that adequate evidence was before the trial court to "indicate a rational basis" for the city's decision to deny the request for rezoning. *Kehr v. City of Roseville*, 426 N.W.2d 233, 236 (Minn.Ct. App.1988). Therefore, the city's denial of the rezoning request is not arbitrary when at least one of the reasons given for the denial satisfies the rational basis test.

The city council claims it made a rational decision to deny rezoning based on legitimate concerns of traffic safety. A determination of whether the city council's decision was unreasonable, arbitrary or capricious is based on the legal sufficiency of and factual basis for the reasons given for the decision. *Swanson*, 421 N.W.2d at 313. Legal sufficiency is established if the city council's decision not to rezone is reasonably related to the promotion of the public health, safety, morals and general welfare of the community. *Honn*, 313 N.W.2d at 418. Although traffic concerns may be legally sufficient to justify denial in a zoning matter, the record must demonstrate a factual basis for the concerns. *C.R. Investments, Inc. v. Village of Shoreview*, 304 N.W.2d 320, 325 (Minn.1981).

Similar to the facts here, the dispute in *C.R. Investments* was over opposition to the approval of a high-density townhouse development. The council there had been told that the road could accommodate increased traffic and that the developer could build turnaround areas in the driveways in order to eliminate any danger from automobiles backing onto the road. *Id.* at 325. The court found that vague reservations, without a factual basis, did not support an inference that the traffic aggravation would be "substantial." *Id.*

Unlike *C.R. Investments*, the traffic concerns here are supported by the evidence. One month before the final vote, the traffic engineer met with the city council and city staff and reported that Pennock Avenue was burdened with traffic in excess of its design capacity and in a manner which affected safety. Although the problem area is one-half mile from the proposed project, the engineer told the council that cars from the Palomino Townhouse project would use this portion of the road. The existence of a present traffic problem is supported by the engineer's written Pennock Avenue Traffic Study, which was entered into the record at trial.

The developers argue, and the trial court agreed, that this traffic concern is insufficient because the traffic engineer concluded in a follow-up report to the city that the increased traffic from the project would be "insignificant." He stated that the proposed project would account for an additional 50 cars on Pennock Avenue and this could be reduced to 25 if the developers restricted the project's southbound access to Pennock Avenue.

The city produced evidence that although it accepted his estimates as being correct, the engineer's conclusion was based on assumptions that were inapplicable to the rezoning request that was before them. The engineer based his estimates on an assumption that County Road 38 was complete, and it is not. The engineer calculated the excess number of cars that a project of 6.4

units per acre would create in excess of a development density of 2.5 units per acre. This also does not reflect the scope of the requested change.

 We find the city to be correct in its claim that it must consider the impact of the zoning change being asked (12 units per acre), rather than the specific project being proposed (6.4 units per acre). When considering an application to rezone property, the city considers more factors than are presented by the particular project. Zoning and rezoning decisions are legislative in nature and are distinguished from decisions on variances and special use permits, which are quasi judicial. *See Honn* 313 N.W.2d at 417; *State, by Rochester Association of Neighbors v. City of Rochester*, 268 N.W.2d 885, 889 (Minn.1978). In particular,

> [i]n passing a zoning or rezoning ordinance, a city council is required to make a legislative judgment that a certain zoning classification will promote the "public health, safety, morals and general welfare." Minn.St. 462.357, subd. 1. In granting or denying a special-use permit, a city council is not altering the legislative judgment as to the zoning classification. Rather, it has the function, adjudicative in nature, of applying specific use standards set by the zoning ordinance to a particular individual use and must be held strictly to those standards.

*Id.* Therefore, when a local governing body acts in its legislative policy-making capacity and denies a petition to amend a zoning ordinance, this court's scope of review is narrowed and the scope of the change being requested is determined by the requested zoning classification, not by the specifics of the proposed project.

 The developers submitted a petition to rezone the property "from R–1A to M–4 to allow up to 11 units per acre according to the land use plan." The only zoning classification which allows this is one for 12 units per acre. Therefore, the change requested is from one unit per acre to 12 units per acre. This is a 12–fold increase in density as compared to the two to three-fold increase assumed by the engineer.

The expert testimony, so examined, supports the action of the city council.

The developers cite several Illinois cases for the contention that while traffic is a factor in zoning cases, a relatively insignificant increase in traffic volumes cannot form a rational basis for denying a request to rezone. *Family Christian Fellowship v. Winnebago County,* 151 Ill.App.3d 616, 104 Ill.Dec. 810, 503 N.E.2d 367, 372 (2nd Dist.1986); *Furling v. County of Sagamon,* 126 Ill.App.3d 851, 81 Ill.Dec. 775, 467 N.E.2d 646, 650 (4th Dist.1984).

If this were only an increase in traffic, then the Illinois cases cited by the developers might be persuasive. However, this is not the case. Citizens are complaining about the impact of additional traffic on a road with a preexisting traffic problem. From the evidence presented, these complaints may be well-founded during the period prior to completion of County Road 38 west of the property. In light of this traffic problem, the city adopted findings to support its denial of the developers' rezoning request. Several of these findings satisfy the rational basis test.

It is the claim of the developers, accepted by the trial court, that the real reason for the refusal was stated in finding # 5—that the "neighborhood sentiment expressed during the public hearing process expressed concern over the appropriateness and compatibility of a proposed townhouse use." However, the reason expressed by the city was explicitly stated as "proposed townhouse use *in an area lacking a complete roadway network.*" Considering the resulting traffic impact, we hold this to be a rational basis.

Finding # 1 states that because the existing land-use plan is under review, it is not an appropriate time to rezone the property. While this may be valid while the plan is under review, presumably by the time County Road 38 is complete the city's land-use plan may or may not present a barrier to rezoning the property. If the land-use plan does not then present a problem, this basis would lose its applicability.

Finding # 2 states that the existing land-use plan designations are based on the assumption that the underlying infrastruc-

ture, including roads, is complete. The status of County Road 38 provides a rational basis because completing it is not within the control of the city or the developers. When the road is complete, this basis will no longer be valid.

Finding # 9 states, "Development of the site under the standards of 'M–1' and 'M–2' zoning designations is premature." The city has thus summarized its preceding findings. It is difficult to term this arbitrary or capricious when the infrastructure is incomplete, the completion of County Road 38 is not under the control of the city or the developers, and the evidence shows that without its completion a density of up to 12 units per acre would add more than an insignificant amount of traffic to an already overburdened and unsafe roadway. Testimony makes it clear, however, that the completion of County Road 38 will substantially ameliorate the traffic problem. This will allow the traffic volume to be measured to determine if there is still a legitimate objection to the right of the developers to the zoning change. At least until then, we cannot say that the city's denial of the zoning change is capricious or arbitrary.

## DECISION

We hold that the city had a rational basis for denying the developers' petition for rezoning.

Reversed.