BETHEL EVANGELICAL LUTHERAN CHURCH, Plaintiff-Appellant, v.
THE VILLAGE OF MORTON et al., Defendants-Appellees.

Third District   No. 3—89—0825

Opinion filed August 23, 1990.—Rehearing denied September 20, 1990.

Olsen & Olsen, Ltd., of Springfield (Harold M. Olsen, of counsel), for appellant.

Thomas E. Davies, of Elliff, Keyser, Oberle & Davies, of Morton, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

Appellant, Bethel Evangelical Lutheran Church, operates a preschool and grade school on property located within a zoned residential area of appellee, the Village of Morton. The church was established in 1947 and subsequently developed a kindergarten, preschool and Sunday school in the 1950's. In 1983, it established a school, kindergarten through sixth grade, and received a special use permit subject to an enrollment cap of 60 students. The permit was modified to increase the enrollment cap to 75 students in 1987. Appellant's school currently has an enrollment exceeding the cap established in 1987.

The church is not located on a collector street as is required by the Morton zoning ordinance, and all other schools in Morton are on collector streets. The church is bounded by a State highway on one side, to which it has no access, and is bounded by residential streets on the other sides. Across the street from the church and school is the Morton High School athletic field. The neighboring surrounding properties, with the exception of the athletic field, are single- and two-family homes.

In August 1988, appellee rejected appellant's request to expand its school to an unlimited enrollment. At the same time appellant requested that the special use permit be modified to do away with the provision limiting the school to kindergarten through sixth grade and that it be allowed to expand its parking lot. Alternatively, appellants requested that the enrollment cap be set at 105 students. Appellant's primary requests were presented, considered and denied in tandem by appellee but the alternative request was not considered.

Appellant appealed the appellee's denial of its request to the circuit court. Appellee challenged the constitutional validity of the Morton zoning ordinance which places a limit on the enrollment of appellant's school. Moreover, appellant argued that the decision of the appellee was arbitrary, unreasonable and had no substantial relation to the public health, safety and welfare. After three days of hearings, the trial court by order dated November 27, 1989, denied appellant's request to declare unconstitutional the school enrollment cap as a condition of appellant's special use permit; ordered that a revised special use permit be issued authorizing appellant to operate an elementary

school (kindergarten through sixth grade) with a maximum enrollment of 105 students; ordered that a revised special use permit be issued authorizing appellant to expand its parking lot subject to a site plan being approved by the director of public works; and ordered each party to bear its own fees and costs. Appellant now appeals only the trial court's order regarding the enrollment cap and attorney fees and costs.

■■ Appellant first argues that the village zoning ordinance does not directly or by implication allow appellee to place an enrollment cap to insure no growth or to ensure that growth will not exceed an arbitrarily determined limit. We disagree. Section 10—10—2(F)(2) of the Morton zoning ordinance contains, in part, the following standards to which special uses must conform:

"a. That the proposed use will not adversely affect other property developed or able to be developed to the uses already permitted;

b. That adequate utilities, access roads, drainage and other necessary supporting facilities have been or are being provided;

c. That adequate measures have been provided to accommodate ingress and egress so as to avoid congestion, not unduly impede surrounding traffic flows, or create hazardous or unsafe conditions;

d. That the standard for site development *** will be such as to enhance the proposed use and its setting ***;

e. That the proposed special use *** will conform to all other requirements of the district ***."

These standards clearly imply that the governing body may impose such enrollment cap conditions subject to review under the law generally applicable to all zoning regulations.

■■ Generally, a zoning ordinance has a presumption of validity and the decision of a legislative body regarding zoning will not be overturned unless, by clear and convincing evidence, the ordinance is arbitrary, unreasonable and without substantial relation to the public health safety or welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899.) The parties do not appear to dispute appellee's general right to grant special use permits in residential areas subject to reasonable conditions. However, the difficult aspect of this case, as identified by the trial court, is the question of what significance does the constitutional right of free exercise of religion have on the presumption of validity normally attached to zoning ordinances. Appellant asserts that the free exercise of religion is being bridled in this case because if the number of students exceeds the enrollment cap,

then some students are being denied their right of freedom of religion.

■■ Appellant cites numerous Illinois cases which seem to indicate that the presumption of validity and the burden of proof required to overcome that presumption are diminished in cases with religious overtones. These cases, however, fail to address the issue in a first amendment infringement context, but simply lump the free exercise issue into a due process rational-basis analysis under the standards set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65. (See *Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 182 N.E.2d 722; *Our Saviour's Evangelical Lutheran Church v. City of Naperville* (1989), 186 Ill. App. 3d 988, 542 N.E.2d 1158; *Family Christian Fellowship v. County of Winnebago* (1986), 151 Ill. App. 3d 616, 503 N.E.2d 367.) What does seem clear about these cases, however, is that in each of these cases the respective court's determined that the regulations imposed by the governing body constituted, to some degree, infringement of the free exercise of religion. Unfortunately, these cases fail to provide insight as to what constitutes some degree of infringement. Nonetheless, we perceive these cases as saying that, since infringement was present, the governing body had to show a compelling reason for the regulation. Under this standard, the facts in each of these cases warranted a finding in favor of the religious institution. In the present case, however, the central question is whether the conditions of the special use permit issued by appellee constitute infringement. If so, then undoubtedly there can be no strong presumption of validity attached to the ordinance. The unanswered question is, what if the regulation does not constitute infringement? Further analysis of this scenario is therefore necessary.

Appellee has cited various Federal cases which discuss at length and set forth tests for determining what constitutes infringement of the free exercise of religion, and if not, the next stage of the analysis. Two cases are particularly instructive. In *Grosz v. City of Miami Beach* (11th Cir. 1983), 721 F.2d 729, *cert. denied* (1984), 469 U.S. 827, 83 L. Ed. 2d 52, 105 S. Ct. 108, the court, in addressing the infringement issue, stated that the government action must pass two threshold tests. First, government regulation of religious beliefs and opinions must be distinguished from restrictions affecting religious conduct. Beliefs and opinions may not be regulated, but regulation of conduct is not absolutely impermissible. Second, the regulation itself must have both a secular purpose and secular effect. A government regulation violates the constitution if it is based upon a disagreement with religious beliefs or is aimed at impeding religion. Moreover, the free exercise

clause is violated if the "essential effect" of the law negatively influences religious activity or beliefs. (*Gorsz*, 721 F.2d 729.) If the regulation passes these two tests, then the government interests must be balanced against the restricted religious interest with one basic principal in mind:

> "[T]he balance depends upon the cost to the government of altering its activity to allow the religious practice to continue unimpeded versus the cost to the religious interest imposed by the government activity." (*Grosz*, 721 F.2d at 734.)

Under this balancing test, governmental regulation which burdens conduct rooted only in secular philosophy or personal preference should generally be upheld. *Grosz*, 721 F.2d at 734.

In *Grosz*, the plaintiffs, members of the Jewish Orthodox faith, were conducting religious services twice daily to a congregation of no less than 10 adults in a remodeled, unattached garage next to their residence. The property was zoned residential, and there appeared to be no special use permit authorizing the use of the property for organized religious congregations. It was not disputed that plaintiff's religious faith required the plaintiff Rabbi to perform services twice daily in the company of 10 adults. Moreover, the court found that the City of Miami Beach allowed such religious conduct in one half of the city's territory and as close as four blocks from plaintiff's home. The court quickly surmised from these facts that there was no infringement upon the free exercise as regulation affecting prayer and religious services involved conduct. Additionally, it was undisputed that the zoning law was secular in purpose. In balancing the interests, the court noted that allowing the religious activity placed a heavy burden on the governing authority's underlying objectives in protecting the health, welfare and sanctity of residential areas within the city, whereas the burden on the plaintiff by upholding the zoning regulation did not rise to the level of criminal liability, loss of livelihood, or a denial of basic income sustaining benefits. The court admittedly noted, however, that the exact economic, convenience or aesthetic impact of requiring plaintiffs to change locations was unknown.

In *Messiah Baptist Church v. County of Jefferson* (10th Cir. 1988), 859 F.2d 820, plaintiffs sought a special use permit for the construction of a church and recreational facility in an agricultural zoned area. Church facilities were allowed as special uses subject to approval by the planning commission. The planning commission denied plaintiff's request, citing access problems, erosion hazards and inadequate fire protection as a few of the reasons. Plaintiff subsequently filed an action under 42 U.S.C. section 1983 (1982) contending, in part, that

the zoning regulation was unconstitutional under the free exercise clause of the first amendment.

The court first analyzed whether the zoning regulation regulated religious beliefs and found that clearly no religious beliefs were being impinged. Secondly, the court considered whether the regulations impermissibly regulated religious conduct. Citing *Wisconsin v. Yoder* (1972), 406 U.S. 205, 32 L. Ed. 2d 15, 92 S. Ct. 1526, the court noted that regulation of conduct stemming from religious beliefs warrants protection when such conduct is integrally related to the underlying religious belief. Plaintiff argued that constructing a place of worship was integrally related to its religious tenets. The court accepted this abstract argument as true but determined that no showing had been made that building the church on the property in question was intimately related to the plaintiff's religious beliefs. At most, plaintiff's statement was nothing more than a preference, rather than a fundamental tenet of plaintiff's religion. *Messiah*, 859 F.2d 820.

The court next considered whether the zoning regulation placed any burden on plaintiff's free exercise of religion. While determining that the regulations do not directly prohibit plaintiff from religious observance, the court found that the regulations did impose an indirect economic burden on the exercise of religion. Nonetheless, quoting *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood* (6th Cir. 1983), 699 F.2d 303, *cert. denied* (1983), 464 U.S. 815, 78 L. Ed. 2d 85, 104 S. Ct. 72, the court stated:

" '[T]he First Amendment does not require the City to make all land or even the cheapest or most beautiful land available to churches.' " *Messiah*, 859 F.2d at 825, quoting *Lakewood*, 699 F.2d at 307.

The court's analysis did not stop there, however. Next the court considered whether alternative means were available for the governing body to accomplish its goals by means which did not impose the indirect economic burden on plaintiff. In upholding the regulation, the court reasoned that the zoning ordinance withstood scrutiny under normal due process analysis and thus could not be implemented without some financial cost to plaintiff. Thus, since the regulation did not affect religious practice, the indirect burden did not render the regulation infirm. The court stated:

"A church has no constitutional right to be free from reasonable zoning regulations nor does a church have a constitutional right to build its house of worship where it pleases." *Messiah*, 859 F.2d at 826.

Other Federal cases, however, using the balancing test set forth in

*Grosz*, have landed in favor of the religious institution. For example, in *Islamic Center of Mississippi, Inc. v. City of Starkville* (5th Cir. 1988), 840 F.2d 293, the court held that the city's denial of a special use permit placed too great a burden upon the religious organization as no practical alternatives were available to the organization within the city limits. Moreover, the court determined that the city was not treating all religious organizations in a like manner when it came to allowing conditional permits.

With this precedent in mind, we now turn to the facts of this case. Appellants do not argue that the zoning ordinance in this case infringes upon their constitutional rights because it was designed to impede their religious pursuits. Appellant does argue, however, that the enrollment cap serves to regulate religious instruction of the church to those who get there first. In essence, appellant's position is that once the village decides to allow the parochial school at this location, the village has no further right to regulate the school except for setback lines, fire code building capacities, and similar objectively measured regulations. We disagree.

As have already been discussed, religious institutions are not *per se* exempt from governmental regulations that regulate conduct. The special use permit in this case, according to precedent, is clearly regulating conduct. Moreover, appellant has put forth no more than the abstract notion that this particular school is fundamental to its religious tenets let alone fundamental at this particular location. We believe the enrollment cap in this case thus passes the two threshold questions set forth in *Grosz* and *Messiah*. According to the Federal precedent, it is also clear that the regulation in this case poses an indirect economic burden on appellant, as it is obvious that the facilities in place are adequate for a school enrollment in excess of the student cap. Therefore, causing appellant to relocate, at least at this stage, appears to be somewhat more of an economic burden on appellant than the burdens imposed in the religious institutions in *Grosz* and *Messiah*. In those cases, the churches had not already constructed elaborate facilities for worship and it was merely a matter of choosing another location. In this situation, the facility was constructed with the consent of the village. The inquiry then, is whether this burden upon the religious institution in having to abide by an enrollment cap which is less than the capacity of the facility outweighs the burden placed on the governing body by allowing an increase in student enrollment.

■ The evidence reveals that the residential setting of the neighborhood was in place prior to the establishment of the school itself. Quite clearly, at some point in time, the allowance of an unlimited en-

rollment would substantially burden the village's interest in protecting the sanctity of the surrounding neighborhood as well as the dignity of the village's comprehensive zoning plan. It cannot be doubted that at some point in time, the existing school facility will reach, as the trial court phrased it, a "saturation point" where school overcrowding, related noise and traffic congestion will demand that the governmental interest prevail in limiting growth. Thus, in an abstract sense, an enrollment cap weighs in favor of the village, and we decline to rule that any enrollment cap is unconstitutional under either a balancing test as in *Grosz* and *Messiah* or a rational basis due process approach as used in previous Illinois decisions stemming from the standards set forth in *La Salle National Bank* where religious overtones were present.

The next inquiry is to balance appellee's interest of an enrollment cap of 75 students versus the appellant's interest of having a higher enrollment cap of 105 students. The school presently has a student enrollment in excess of the enrollment cap. To hold appellant to this cap undoubtedly creates significant indirect burden in that in order for appellant to educate the number of students in excess of the cap, a new location for some or all of the students must be obtained. Moreover, the evidence did not indicate that an enrollment cap of 105 students would create any more of a burden upon appellee than an enrollment cap of 75 students. Experts testified that the market value of surrounding properties had not in fact depreciated, nor would a slight increase in enrollment create any unresolvable traffic problems. The trial court ordered that a special use permit issue with an enrollment cap of 105 students, and appellee, in its brief, requests that trial court's order be affirmed. Thus, based on appellee's consent, appellant's alternative request of an enrollment cap of 105 students is sustained. We likewise reach the same result regarding appellant's request for expansion of the parking lot.

■ Finally, appellant asserts that appellee ought to be required to pay appellant's attorney fees and costs under the authority of section 2—611 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—611.) We find appellant's arguments on this point without merit and affirm the trial court's decision on this issue.

Thus, for the reason expressed herein, the decision of the trial court is affirmed.

Affirmed.

GORMAN and STOUDER, JJ., concur.