ROBERT N. HERREN et al., Plaintiffs-Appellants, v. ZONING BOARD OF APPEALS OF KENDALL COUNTY et al., Defendants-Appellees.

(No. 71-97;

Second District—March 13, 1972.

Saxon & Nizik, of Plainfield, for appellants.

Dallas C. Ingemunson, State's Attorney, of Yorkville, and O'Brien, Burnell, Puckett & Barnett and Dreyer, Foote & Streit, both of Aurora, for appelles.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The plaintiffs, Robert Herren, Robert Gilmour, Joanne Gilmour (hereinafter referred to as the property owners) and Avery Gravel Company (hereinafter referred to as Avery) appeal from a circuit court order affirming a decision of the Zoning Board of Appeals of Kendall County (hereinafter referred to as the Board), whereby plaintiffs were denied a special use permit to mine limestone and rock.

This appeal was originally filed in the Supreme Court, briefs and excerpts from record filed and oral arguments heard. Shortly after oral argument, the Court stated that it had no jurisdiction on direct appeal and, on its own motion, transferred the case to this Court. A motion to strike portions of Avery's "reply" brief was not passed upon by the Supreme Court.

Taken with this case, therefore, is that motion (on behalf of Certain Individual Intervening Petitioners and Defendants who were defendants in the proceedings in the trial court) to strike in part the reply brief filed by Avery. We first dispose of this motion.

As basis for the motion to strike it is stated:

The property owners and Avery have been represented in all proceedings by different attorneys. On June 23, 1970, plaintiffs requested a thirty day extension of time in which to file the appellants' brief, the basis for the request being that the appeal required the coordinated efforts of counsel for both the property owners and Avery, and that the additional time was needed in order to have Avery's counsel examine and approve appellants' brief which was being prepared by the property owners' attorney. An extension was granted and the appellants' brief was filed on August 11, 1970. Despite the representation made to the Court in requesting the extension, on December 10, 1970, after two out of the three appellees had filed their answering briefs, Avery requested permission to file a separate appellant's brief alleging it had interest separate from those of the property owners and that it wished to acquaint the Court with additional points and authorities. Objection was made and the motion denied. However, the Supreme Court then gave Avery leave to file a separate reply brief.

■■ The "reply" brief which Avery filed is, in all respects, the separate appellant's brief which the Supreme Court denied the right to file. It

contains a complete recitation of the facts and argues five points even though all other briefs filed contain only three arguments. Some points are raised for the first time and nowhere is there an attempt made to reply to contentions made by the appellees.

Supreme Court Rule 341(g) (Ill. Rev. Stat. 1969, ch. 110A, par. 341(g) ) provides:

"The reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee and need contain only Argument."

Not only is the "reply" brief a violation of this Rule but it additionally violates the page limitations established in Rule 341(a) [Ill. Rev. Stat. 1969, ch. 110A, par. 341(a)]. Avery states in this brief that "the legal and factual issues  *  *  *  in the instant case may have been somewhat blurred" and "(a)s a convenience to the Court  *  *  *  Avery takes the liberty in this Reply Brief to restate the nature of the case, the issues involved, the pleadings and the essential facts." It seems apparent that this alleged "assistance" to the court is merely a guise enabling Avery to file a separate appellant's brief. In this instance, consideration of the arguments raised in the "reply" brief does not effect our ultimate determination and we will therefore deny the motion to strike. We wish to make it clear that we do not here set a precedent for the consideration of improper reply briefs and, in the future, no consideration will be afforded reply briefs which violate the rules in as flagrant a manner as does Avery's.

The property owners hold title to a 78-acre tract of land located in Kendall County, said property being presently zoned for agricultural use. They entered into a contract wherein it was agreed that Avery would remove the limestone and rock in an 18-acre area in order to create a lake; that Avery would be compensated for such excavation through proceeds gained from the sale of rock removed from the site and crushed; and that since the sale price of the extracted rock would more than compensate Avery, the property owners would receive 10% of Avery's gross, either in the form of rock or in money.

The land involved being zoned agricultural, it would be necessary that the mining of limestone be accomplished pursuant to section 7.2 of the Kendall County Zoning Ordinance which provides in part:

"The following uses may be allowed by special use permit in accordance with provisions of Section 13.

(a) Mining, loading and hauling of sand, gravel, topsoil or other aggregate or minerals, including equipment, buildings, or structures, for screening, crushing, mixing, washing, or storage, provided that (1) no open pit or shaft is less than three hundred (300)

feet from any public road, nor less than five hundred (500) feet from an existing Residence or 'R' District established by this ordinance; (2) all buildings or structures, for the screening, crushing, washing, mixing, or storage are located not less than one thousand (1,000) feet from an existing residence or any Residential District established by this ordinance; (3) the entire property is fenced in accordance with Section 4.13 of this ordinance; and (4) a plan of development for the reclamation of the land is provided as part of the application for Special Use Permit. The plan of development shall be accompanied by a written agreement between the owner or his agent and the County of Kendall and a performance bond in an amount equal to the cost of the reclamation of the land as set forth in the development plan."

The property owners filed a petition with the Board wherein they sought the special use permit required for mining. After a hearing on the petition, the Board denied the application for the permit.

The property owners, joined by Avery, filed a three-count complaint in the circuit court: Count I sought administrative review of the Board's decision, Count II was voluntarily withdrawn by the plaintiffs and Count III sought a declaratory judgment declaring certain portions of the zoning ordinance unconstitutional. The Oswego Community School District No. 308 (which owns school property located adjacent to the proposed site) and neighboring landowners (designated as Certain Individual Intervening Petitioners and Defendants) became defendants in the action in that they objected to the proposed special use. The trial judge struck and dismissed Count III, finding the challenged sections of the ordinance constitutional. The cause proceeded to hearing on Count I and the judge entered an order affirming the decision of the Board.

■■■ On appeal, plaintiff's question the validity of section 7.2 of the ordinance which requires that a property owner's plan of development be accompanied by a written agreement between the landowner and the County. The property owners did not enter into or submit such an agreement to the Board. The Board's findings did not state that denial was due to the lack of an agreement. A motion was made in the trial court to dismiss Count I for the lack of a written agreement; however, this motion was denied. Under these circumstances, we are precluded from considering the constitutionality of the provision, since a reviewing court,

" '* * * will not determine the constitutionality of the provisions of an act * * * where the party urging the invalidity of such

provisions is not in any way aggrieved by their operation.' (citations omitted)" *Rosewood Corp. v. Fisher* (1970), 46 Ill.2d 249, 259.

██ The plaintiffs also challenge section 13(j) (6) which provides that after an application for a special use permit has been denied, twelve months must elapse before a rehearing. The property owners filed a petition in May 1967, requesting a permit to mine approximately 70 acres. Their application was denied by the Board in June, 1967, and it was inferred that if certain changes were made in the description of the area to be mined, the Board might grant the permit. In August, 1967, the plaintiffs reduced the acreage to 18 and filed another petition which was then dismissed because it was filed within twelve months of the original petition. The property owners then waited the twelve month period before filing the petition with which this appeal is concerned. By complying with the provision of the ordinance and waiting the requisite time the property owners have participated in the proceedings in a manner "which by fair inference acknowledges the validity of the statute." (*Cochennet v. Ambrose* (1961), 21 Ill.2d 520, 524.) Consequently, they have waived their right to question the validity of this section of the ordinance. *People ex rel. Poole v. Tucker* (1958), 13 Ill.2d 154, 156.

██ An issue raised in Avery's reply brief argues that, in the Surface-Mined Reclamation Act (Ill. Rev. Stat. 1969, ch. 93, par. 180.1 *et seq.*), the State has declared public policy to be the encouragement of mining uses, and that the Board and the trial court are prohibiting that which public policy encourages. This argument is not persuasive in that the Act operates "after the fact"; it declares what public policy is, in regard to the disposition and reclamation of land, *after* mining has taken place. (See, Ill. Rev. Stat. 1969, ch. 93, par. 180.2.) It does not state that mining uses are to be encouraged, but states that to assure productivity of land already mined, reclamation is encouraged.

The balance of the contentions raised in Avery's reply brief are somewhat related to the final argument in appellants' brief, and will be considered jointly.

In order to receive a special use permit a property owner must not only comply with the standards set forth in section 7.2 but must also comply with all four of the conditions provided in section 13.7—4:

"No Special Use shall be granted by Zoning Board of Appeals unless the special use:

(a) Is necessary for the public convenience at that location  *  *  *

(b) Is so designated, located and proposed to be operated that the public health, safety and welfare will be protected;

(c) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and

(d) Except as may be otherwise recommended by the Zoning Board solely in the case of Planned Developments, shall conform to the applicable regulations of, and preserve the essential character of the district in which it is to be located, or as otherwise prescribed in this amended ordinance."

The Board found that the contemplated mining operation would cause perceptible blasting vibrations, would generate dust, would cause noise sufficient to disturb nearby residents and disrupt classes in the school, would precipitate an increase in the area's truck traffic, and found that the mining site would be completely visible from the school. Though not explicitly stated, it is apparent that the Board denied the special use in order to protect the public health, safety and welfare pursuant to section 13.7—4(b).

██ The trial court affirmed these finding of the Board and additionally stated that the plaintiffs failed to meet and comply with any of the standards contained in 13.7—4; that is, that a rock quarry at the proposed location is not necessary for the public convenience, that the use would impair the value of adjoining property, that the public health, safety and welfare would not be protected and that the use would not be in conformity with the general character of the neighborhood. Review of the Board's decision having been sought under administrative review, judicial inquiry must be consistent with the Administrative Review Act (Ill. Rev. Stat. 1969, ch. 110, par. 274) which provides "* * * The findings and conclusions of the administrative agency on questions of fact shall be *prima facie* true and correct." This has been interpreted as limiting

"* * * the function of the reviewing court to ascertaining whether the findings and decisions of the administrative agency are against the manifest weight of the evidence. (Citations omitted.)" *Davern v. Civil Service Com.* (1970), 47 Ill.2d 469, 471.

The Board's findings concerned the public-welfare portion of the ordinance (sec. 13.7—4(b)) and might possibly be viewed to have touched upon that portion dealing with the character of the neighborhood (sec. 13.7—4(d) ). It was not the trial court's function to determine the property owners non-compliance with the other sections of the ordinance (secs. 13.7—4(a) and (c) ). Under the ordinance and case law (*Pioneer Trust & Sav. Bk. v. McHenry County* (1968), 41 Ill.2d 77, 84) a special use permit can be denied if such denial bears a substantial relation to the public health, safety and welfare.

A summary of the evidence follows.

Robert Herren, one of the landowners testified that the highest and best use of the land is for mining; that it cannot be used as farmland because of the vast amount of rock; that residences cannot be built because the rock is deep and substantial blasting would be necessary in order to create foundations and basements, because there are no sewerage facilities and the area is not conducive to septic tanks; that the entire operation would take two to three years to complete and that he entered into the contract with Avery solely for the purpose of creating a lake on the property.

Edward Kyser testified that he is a real estate appraiser; that a high percentage of the land is waste and cannot be used for agricultural purposes; that the highest and best use is for mining; that as presently zoned the land is worth $300 per acre but that for mining purposes it would be worth $2000 to $3000 per acre; that mining operations will not adversely affect the surrounding property values; that after a lake is created on the land, homes could be built; that for residential purposes the land would be worth $8000 to $10,000 per acre; that the property in question is located 500 feet from the school property and 1000 feet from the school building; that a mining use would not adversely affect school operations.

Glenn Palmer testified that he is a real estate broker; that the highest and best use of the land is for a quarry; that the 500 feet between the school property and the quarry would be a sufficient buffer.

Clyde Avery testified that he is the owner of Avery Gravel; that the limestone in the land is worth approximately one million dollars; that the rock has to be crushed, screened and processed; that a regular contract driller and blaster will do the blasting; that the blasting would be done once a week; that it would take five years to complete the project; that dust is produced from crushing the rock; that the dust should not be a problem because the operations could be enclosed or watered down; that if necessary the operation would be enclosed entirely; that there are presently no totally enclosed crushing operations in the area; that enclosing the operation would add to the expense of mining; that there is nothing in the contract with the property owners that prevents Avery from digging down further than the twenty feet which he states he will dig, if he finds that the rock extends deeper than twenty feet; that the deeper Avery digs for rock the longer the operation will take; that there is nothing in the contract between the property owners and Avery which specifies how dust will be controlled.

Kenneth Gowran testified that he is the Highway Commissioner for the Town of Oswego; that if he could purchase crushed rock at the property in question the taxpayers would save money in that he must

now pay hauling charges to bring rock in from fifteen to eighteen miles away; that the crushed rock would make a "hundred percent better road;" that a mining use would therefore serve a need in the community; that he has never advertised for competitive bids for crushed rock.

Paul Brummond testified that he is a vibration consultant; that he monitored blasts which occurred at the property before the County shut-down the operation and a permit was sought; that these blasts could not cause any damage to even a weak structure; that in his opinion the type of operation which is contemplated could not cause any structural damage to surrounding buildings; that a sonic boom measures 120-130 decibels whereas the normal quarry blast registers about 90-100 decibels.

T. Lloyd Traughber testified that he is assistant superintendent of the school which is located 500 feet from the proposed site; that there are plans for expansion of the school in all directions including toward the property in question; that when there had been blasting, the noise sounded like a sonic boom; that considerable amount of dust (which he believed was caused by the blasting) fell on the running track and on the cars in the parking lot.

George Bolin testified that he lives across the road and to the east of the proposed quarry; that when the initial blasting occurred it could be heard and felt in his house; that thereafter there was a considerable increase in dust; that he owns subdivided lots in the area which he has been attempting to sell; that he has sold two of them but has lost one sale due to the controversy over the proposed quarry.

Mrs. Oliver Hemm, the president of the neighboring high school P.T.A. testified that the P.T.A. objects to a mining use because the school children would be frightened and disturbed by the blasting; that classes would be disrupted and the quarry would be an attractive nuisance to the children.

The testimony of Mrs. Robert Bodine, president of the neighboring grammar school P.T.A. was substantially the same as that of Mrs. Hemm.

Eight women who live from two blocks to one mile from the site testified that they object to the proposed use.

Petitions with the signatures of 400 objectors were admitted into evidence.

Admitted also, was a letter written by the Oswego township supervisor in which he stated that the taxpayers would save money and have improved highways if the land could be mined; that adjacent property values would not be impaired.

■■ It is not against the manifest weight of the evidence to find that the use would not be operated in a manner which would protect the public health, safety and welfare. The evidence indicated that the noise

from the blasting is similar to a sonic boom and that although the vibrations could not cause any damage, they could be felt in the school and at neighboring residences. There was no direct testimony that classrooms were disrupted or the children frightened by the initial blasts, yet it would be fair to surmise these results. It was stated that blasting would occur only one day of the week, but there is no evidence as to whether the sonic-boom-type noises would occur once during that day or repeatedly. The evidence indicated that additional dust resulted from the initial blasting and an even greater amount of dust would be caused by the crushing operation which was never begun. It is certainly valid to infer that an operation such as this, encompassing eighteen acres and located 500 feet from school property, will draw its share of curious children who would run the risk of injury. It was ascertained that the school will be expanding even closer to the proposed site and that the mining would continue for the next five years, and possibly longer.

■■ The plaintiffs allege that section 7.2 provides for certain physical requirements, the satisfaction of which the County Board has determined will automatically protect the public welfare; that they have complied fully with that Section and that they therefore, as a matter of right, must be granted the special use permit. This interpretation is untenable for two reasons. First, section 7.2 contemplates that the granting of the permit is discretionary since it provides that certain uses *"may* be allowed." (Emphasis added.) The very nature of a special use demands discretion on the part of the Board.

> "* * * Because a special * * * use zoning ordinance does not allocate any particular zones for the establishment of these unique uses as a matter of right, the local zoning authorities are vested with broad powers in determining the suitability of a given site for a proposed special * * * use." *Pioneer Trust & Sav. Bk. v. McHenry Cty., supra* at 84.

Second, plaintiffs' interpretation would totally read out of the ordinance section 13.7—4 which specifically states that a special use permit will not be granted unless four additional conditions are met.

Finding no error, we affirm the decision of the Circuit Court.

Judgment affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.