2026 IL App (3d) 250289

Opinion filed March 10, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| EQUITY SOLAR ILLINOIS, an Illinois Corporation; USS MIDDLE SOLAR LLC, a Delaware Corporation; and USS SARATOGA SOLAR, LLC, a Delaware Corporation, | ) ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois. |
| | ) | Appeal No. 3-25-0289 |
| Plaintiffs-Appellees, | ) | Circuit No. 24-CH-10 |
| | ) | |
| v. | ) | The Honorable |
| | ) | Sheldon R. Sobol, |
| THE COUNTY OF GRUNDY, a Body Politic, | ) | Judge, Presiding. |
| | ) | |
| Defendant-Appellant, | ) | |

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Justices Holdridge and Bertani concurred in the judgment and opinion.

**OPINION**

¶ 1     This heated dispute involves special use permits to build commercial solar energy facilities (CSEFs). Grundy County rejected the special use permit requests, and the plaintiffs filed a *mandamus* action. The circuit court granted the *mandamus* request and entered an order directing Grundy County to issue the permits. Grundy County appeals, and we affirm.

¶ 2                                        I. BACKGROUND

¶ 3        In January 2023, the legislature amended the Counties Code to implement a series of requirements for siting and permitting CSEFs. See 55 ILCS 5/5-12020 (West 2024). Discussed in greater detail below, these amendments (Solar Amendments) authorized counties to issue rules regarding solar farms—just not *more* rules than the legislature had already written. *Id.* § 5-12020(g). In May 2023, defendant Grundy County adopted an amendment (Ordinance) (Grundy County Ordinance No. 2023-005 (approved May 9, 2023)) to amend the Grundy County Code section 8-2-5-30 (Grundy County Code § 8-2-5-30 (adopted Jan. 9, 2018)) by incorporating the requirements of section 5-12020. See Grundy County Code § 8-2-5-30 (amended May 9, 2023).

¶ 4        In September 2023, USS Middle Solar, LLC, and USS Saratoga Solar, LLC (together, plaintiffs), submitted applications for special use permits to construct two CSEFs (Projects) in unincorporated Grundy County. The Projects were proposed on agricultural land leased from private property owners, with each CSEF anticipated to occupy more than 30 acres. Under amended Grundy County Code section 8-2-5-30 (*id.*), CSEFs are not permitted uses as of right and require approval of a special use permit by the Grundy County Board following public hearings before the Grundy County Zoning Board of Appeals (ZBA) and the Land Use Committee (LUC).

¶ 5        Plaintiffs' applications included the materials required by section 5-12020 and the Ordinance, including project descriptions, site plans, agricultural impact mitigation agreements, environmental inventories and assessments, vegetation and weed control plans, decommissioning plans, and documentation of compliance with applicable environmental, aviation, noise, electrical, safety, and landscaping regulations. There is no dispute that the CSEF applications satisfied the enumerated filing and technical requirements.

¶ 6        The ZBA conducted a public hearing in December 2023, at which it received testimony and evidence regarding the Projects. Following the hearing, the ZBA recommended denial, finding

the Projects incompatible with surrounding properties, not beneficial to Grundy County's needs, present safety concerns, and unsuitable for the areas' future development. Weeks later, the LUC likewise recommended denial, finding that the Projects were unsuitable for development in the proposed areas.

¶ 7   In February 2024, the Grundy County Board considered the applications. The Board unanimously voted to deny the special use permits, citing concerns that included objections from the City of Morris—though the Projects were located outside the City's jurisdiction—relating to potential impacts on future airport expansion, possible commercial development, and generalized concerns regarding battery storage. The Grundy County Board's stated reasons were not tied to any claimed failure of the Projects to meet the specific requirements of section 5-12020 nor the Ordinance.

¶ 8   On May 13, 2024, plaintiffs filed a one-count complaint for *mandamus* in the circuit court of Grundy County, alleging that the Grundy County Board's denial was contrary to the Counties Code and that, under section 5-12020, Grundy County lacked discretion to deny compliant applications based on considerations outside the statutory criteria. Grundy County, in turn, maintained that traditional zoning considerations—including those described in *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40 (1957), and *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370 (1960)—remained relevant to its legislative zoning authority.

¶ 9   On March 3, 2025, the parties filed cross-motions for judgment on the pleadings, agreeing that no genuine factual disputes existed and that the case presented purely legal issues. On May 14, 2025, following oral argument, the circuit court granted Plaintiffs' motion for judgment on the pleadings, denied Grundy County's motion, and ordered the County to green light the special use

3

permits for the Projects. This appeal followed. This court also allowed the Village of Channahon, the City of Morris, and the Village of Shorewood to file an *amicus curiae* brief.

¶ 10                                    II. ANALYSIS

¶ 11        The issue before this court is the propriety of the trial court's order granting judgment on the pleadings to the Plaintiffs, which granted their request for *mandamus*. That question requires us to construe the authority possessed by Grundy County as well as the applicable statutes and ordinances. Our analysis begins with the recognition that Grundy County is not a home-rule unit of government. Therefore, Grundy County "has only those powers expressly granted by law, powers incidental to those provided by law, and powers which are considered indispensable to the accomplishment of the purposes of the municipal corporation." *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992); see Ill. Const. 1970, art. VII, § 7 ("[c]ounties and municipalities which are not home rule units shall have only powers granted to them by law"). Division 5-12 of the Counties Code (55 ILCS 5/5-12001 to 5-12021 (West 2024)) authorizes counties to zone and regulate construction and buildings. However, a non-home-rule unit "cannot adopt ordinances under a general grant of power that infringe upon the spirit of state law or are repugnant to the general policy of the state." *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 258-59 (2003).

¶ 12                              A. The Solar Amendments

¶ 13        The Solar Amendments expressly identify things Grundy County *may* do relative to CSEFs. For example, section 5-12020(b) provides that a county may establish standards for CSEFs that "include all of the requirements specified in [the Solar Amendments] but may not include requirements *** that are more restrictive than specified in this Section." 55 ILCS 5/5-12020(b) (West 2024). The "requirements specified" in section 5-12020 are very sparse and mainly relate

4

to siting restrictions on things like setbacks, fencing, and panel height. *Id.* § 5-12020(e). Counties are also permitted to adopt regulations concerning such subjects as vegetative screening (*id.* § 5-12020(*l*)); consultation with the Illinois Department of Natural Resources (IDNR) and United States Fish and Wildlife Service recommendations (*id.* § 5-12020(n)); compliance with IDNR recommendations (*id.* § 5-12020(o)); consultation with the Illinois State Historic Preservation Office (*id.* § 5-12020(q)); and vegetative management plans and pollinator-friendly ground cover (*id.* § 5-12020(r)).

¶ 14    However, the Solar Amendments also expressly identify things Grundy County *cannot* do. For example, it is prohibited from placing restrictions on the installation or use of a CSEF unless it adopts an ordinance that complies with section 5-12020, and it "may not establish siting standards for supporting facilities that preclude development" of CSEFs. *Id.* § 5-12020(g). Grundy County is prohibited from adopting zoning regulations that disallow, permanently or temporarily, CSEFs from being developed or operated in any district zoned to allow agricultural or industrial uses. *Id.* § 5-12020(h).

¶ 15    Finally, the Solar Amendments expressly state what Grundy County *must* do. Section 5-12020(g) states that a request for siting approval or a special use permit for a CSEF "shall be approved if the request is in compliance with the standards and conditions imposed in this [Counties Code], the zoning ordinance adopted consistent with this Code, and the conditions imposed under State and federal statutes and regulations." *Id.* § 5-12020(g).

¶ 16    The Solar Amendments stand against a public policy backdrop declaring that "it is the policy of this State to rapidly transition to 100% clean energy by 2050," in order "[t]o provide the highest quality of life for the residents of Illinois and to provide for a clean and healthy environment." 20 ILCS 3855/1-5(1.5) (West 2024). The legislature has further stated that "[i]t is

5

necessary to improve the process of procuring electricity to serve Illinois residents, to promote investment in energy efficiency and demand-response measures, and to maintain and support *** zero emission facilities, and renewable resources." *Id.* § 1-5(4). Moreover, the legislature has concluded that "[p]rocuring a diverse electricity supply portfolio will ensure the lowest total cost over time for adequate, reliable, efficient, and environmentally sustainable electric service." *Id.* § 1-5(5). Finally, the Illinois General Assembly has found that "[d]eveloping community solar projects in Illinois will help to expand access to renewable energy resources to more Illinois residents." *Id.* § 1-5(7).

¶ 17                                B. Discretionary or Ministerial

¶ 18        Many of the parties' arguments in this case turn on whether Grundy County had discretionary authority, and if so, how much, to issue the special use permits. Generally, if a governmental body has no discretion and is obligated to simply issue a permit, then *mandamus* would likely be the appropriate procedural vehicle because a writ of *mandamus* entails a clear legal right to the relief requested. *Kramer v. City of Chicago*, 58 Ill. App. 3d 592, 598-99 (1978). On the other hand, where performance of an official duty or act involves the exercise of discretion, *mandamus* is not an appropriate remedy. *Id.* Instead, other remedies, such as declaratory judgment, might be appropriate. See *International Union of Operating Engineers, Local 965 v. Office of the Comptroller*, 2014 IL App (4th) 131079, ¶ 19 (" '[T]he appropriateness of the [Declaratory Judgment] Act as a vehicle for relief is a question for the trial court's discretion, and *** review is deferential.' " (quoting *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1059 (2007))).

¶ 19        The statute expressly references the zoning classification at issue as a "special use permit" rather than an ordinary permitted use. In general, a " 'special use' is a type of property use that is expressly permitted within a zoning district by the controlling zoning ordinance so long as the use

6

meets certain criteria or conditions." *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 16 (2001). "The purpose of special uses is to provide for those uses that are either necessary or generally appropriate for a community but may require special regulation because of unique or unusual impacts associated with them." (Internal quotation marks omitted.) *Id.* In other words, it allows a landowner to use their land in a manner that is not automatically permitted as-of-right in a zoning district, often premised on the satisfaction of certain conditions. Traditionally, a decision to issue a special use permit is a discretionary act. See *Herren v. Zoning Board of Appeals of Kendall County*, 4 Ill. App. 3d 342, 351 (1972).

¶ 20        However, Plaintiffs point to section 5-12020's directive that a

"request for siting approval or a special use permit for a *** [CSEF] *** shall be approved if the request is in compliance with the standards and conditions imposed in this [Counties Code], the [county's] zoning ordinance adopted consistent with this Code, and the conditions imposed under State and federal statutes and regulations." 55 ILCS 5/5-12020(g) (West 2024).

On the strength of that statutory language, they contend that Grundy County had no discretion and that the act of issuing special use permits was purely ministerial. Because issuance of the permits was ministerial, plaintiffs assert that *mandamus* was an appropriate remedy.

¶ 21        Despite the Solar Amendments, Grundy County spends considerable energy arguing that its authority to make legislative, discretionary zoning changes is well settled. Grundy County is correct that counties are generally empowered to regulate and restrict the location and use of structures, buildings, and land uses "[f]or the purpose of promoting the public health, safety, morals, comfort and general welfare." *Id.* § 5-12001. Special use permits typically involve a county's discretionary decision-making authority. Likewise, "[z]oning is primarily a legislative

7

function, and it is within the province of local governmental bodies to determine the use of land and to establish zoning classifications." *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 11 (citing *La Grange State Bank v. County of Cook*, 75 Ill. 2d 301, 307 (1979)); see 55 ILCS 5/5-12012.1 (West 2024). And, historically, when a county's zoning and permitting decisions were challenged in court, they were reviewed in accordance with the considerations enumerated in *La Salle National Bank*, 12 Ill. 2d at 46-47, and *Sinclair Pipe Line*, 19 Ill. 2d at 378.

¶ 22    But, this case does not involve traditional land-use decisions by a county. Rather, it turns on the recently-enacted Solar Amendments and whether they represent a *loss* of power for non-home-rule counties when it comes to a proposed CSEF project. The circuit judge concluded that it did. He stated:

"the statute [section 5-12020] is one that permits the County a very limited ability to set rules which [are] different than what is provided for in the County's code. So this is much more limiting in nature in what the County has the right to say for the special-use permit when it comes to these solar facilities. And in this case, *** those limited requirements that are satisfied, once those are all satisfied, if the applicant has satisfied them, then it is required that the County issue the special-use permit. That's the 'shall be issued' language that is in the statute. And that's where *** the legislative is taken away and [it] becomes a [ministerial[1]] decision. And once everything is satisfied, in this instance, that's what's been pled, that's what's been admitted to, then the County has to issue the [permit]. So *** that[ is] the way that I read the statute."

---

[1]The trial judge actually said, "the legislative is taken away and [it] becomes a discretionary decision." From the context and his ultimate ruling, however, he seemingly misspoke and meant to say that it becomes a ministerial decision.

¶ 23     Nonetheless, Grundy County argues that "nothing in the plain language of the Solar Amendments suggests an intent to eliminate local discretion." We agree; we see no intent to *eliminate* discretion. However, there is a *lot* in the plain language that points to the conclusion that discretion is minimized on the front end and eliminated on the back end of the process. The discretion preserved by the Solar Amendments is limited to condition-setting as permitted within the statute, bypassing traditional compatibility analysis. Thus, a *La Salle National Bank* or *Sinclair Pipe Line* type of hearing is inapplicable here. In short, the Solar Amendments restrict the county's discretion to only a few enumerated items, and then so long as those conditions are satisfied (along with compliance of other applicable laws) that discretion is effectively eliminated by the directive that a permit "*shall be approved*." (Emphasis added.) 55 ILCS 5/5-12020(g) (West 2024).

¶ 24     In its briefs, Grundy County cites *State Bank of Waterloo v. City of Waterloo*, 339 Ill. App. 3d 767 (2003), which involved a question of whether the State's regulatory scheme precluded local discretion. In that case, the court stated:

> "Whether municipal regulation is preempted by state authority is a question of legislative intent. A comprehensive scheme of state regulation implies that the legislature intended to leave no room for local regulation. [Citation.] An express legislative intent that an act achieve statewide uniformity is similarly indicative that the legislature intended for state regulation to preempt local control. [Citation.] By contrast, where authority is expressly delegated to local governments to regulate in an area, the legislature did not intend the state's regulatory authority to preempt the field entirely." *Id.* at 771-72.

Grundy County relies on the final sentence of that passage to buttress its position that, because the Solar Amendments permit ongoing regulatory authority, the legislature demonstrated its

9

determination that local control is still necessary. The problem with this argument is that, while the county retains some regulatory authority, its remaining authority is quite minimal.

¶ 25    Even so, Grundy County argues that a CSEF applicant must comply with all other aspects of the Counties Code, given that the "shall be approved" language is conditioned upon "compliance with the standards and conditions imposed in this [Counties Code]." 55 ILCS 5/5-12020(g) (West 2024). In other words, Grundy County contends that the use of the phrase "imposed in this [Counties Code]," rather than, say, "imposed in this section," indicates a legislative intent that CSEFs remain regulated by various other provisions of the Counties Code. That may be true, but even those standards cannot, under the plain language of the statute, be more restrictive than those adopted in the Solar Amendments.

¶ 26                C. Harmonizing Local Discretion With a Statutory Approval Mandate

¶ 27    In construing section 5-12020, our task is to ascertain and give effect to the legislature's intent, beginning with the statute's plain language. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). When that language is clear, we must apply it as written while also reading the statute as a whole and in harmony with all related provisions. *Id.* Section 5-12020 authorizes counties to regulate the siting of commercial solar energy facilities through the adoption of zoning standards and the issuance of special use permits, provided that such standards are consistent with—and not more restrictive than—the limitations imposed by the Counties Code. 55 ILCS 5/5-12020(b), (g) (West 2024). At the same time, subsection (g) directs that a request for a special use permit "shall be approved" if the application complies with the standards and conditions imposed under the Counties Code and the county's zoning ordinance is consistent with the Counties Code and the applicable state and federal law. *Id.* § 5-12020(g). The statute thus reflects a legislative effort to

10

balance continued local involvement in siting decisions with a clear directive favoring approval of compliant projects.

¶ 28        We do not read the Solar Amendments as eliminating all local discretion when reviewing applications for special use permits. The term "special use permit" has a specific meaning, and the legislature's retention of that framework signals its intent to preserve a measure of local discretionary judgment, particularly with respect to the imposition of site-specific conditions addressing impacts expressly contemplated by the statute. See *Living Word Outreach*, 196 Ill. 2d at 16. However, the discretion preserved by section 5-12020 is both defined and limited by the legislature. That discretion concerns only the identification and application of permissible conditions authorized by the Counties Code, not a broader reevaluation of whether a compliant CSEF should be allowed at all, under any set of conditions. Where a county has imposed lawful conditions, it retains authority to ensure compliance with those conditions before approval is granted.

¶ 29        Here, however, Grundy County did not deny the applications based on a failure to meet any condition authorized by section 5-12020, nor did it impose additional statutorily permissible conditions requiring further compliance. Instead, the county relied on considerations outside the scope of the standards identified in the Counties Code. Because the parties agree that plaintiffs' applications satisfied all applicable statutory and ordinance-based requirements, and because no additional lawful conditions remained to be met, the county's role at that stage was limited to implementing the approval directive set forth in section 5-12020(g). Under those circumstances, the duty to issue the special use permits was sufficiently definite to support *mandamus*, and the circuit court did not err in granting that relief.

11

¶ 30        In reaching this conclusion, we reject Grundy County's arguments that the Solar Amendments' legislative history demonstrates that the legislature did not intend to narrow its discretion. We resort to a legislative history analysis only when the plain meaning of the statutory language is ambiguous. *Town of Serena v. Kelly*, 311 Ill. App. 3d 344, 346 (2000). No ambiguity exists here.

¶ 31        Even if we did engage in a legislative history analysis, both sides in this case present statements from legislators to support their respective positions. We would have to cherry pick the legislative history to reach an interpretive result. Judge Harold Leventhal described this as being tantamount to going to a cocktail party and looking for one's friends. See *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring) (crediting Judge Leventhal for the metaphor). There are situations where a legislative history analysis may be helpful and appropriate, but this is not one of them.

¶ 32        We allowed the Village of Channahon, the City of Morris, and the Village of Shorewood to file an *amicus curiae* brief because they are located near the proposed CSEFs. But we cannot accept their contentions that section 5-12020 should be interpreted in a way that allows Grundy County to retain broad discretion to consider (beyond the statutorily permissible conditions) whether a CSEF might interfere with those municipalities' plans for future border expansion. Interpreting the plain language "shall be approved" to mean something other than, or less than, it clearly and unambiguously says arcs the statutory language past its breaking point. We cannot ignore a very plain legislative directive merely because it might infringe on municipalities' speculative future growth strategies. Regulation without representation goes only so far.

¶ 33        Based on the foregoing, we hold that plaintiffs USS Middle Solar, LLC, and USS Saratoga Solar, LLC, demonstrated their clear rights to receipt of the requested special use permits and

12

Grundy County had a nondiscretionary, statutory duty to issue those permits. Accordingly, issuance of a *mandamus* was an appropriate remedy.

¶ 34                                    III. CONCLUSION

¶ 35        We conclude that the Illinois General Assembly's amendments to section 5-12020 of the Counties Code demonstrated a clear legislative intent to substantially restrict Grundy County's traditional discretionary and regulatory land-use powers in the context of CSEFs. The Grundy County circuit court properly found that, because plaintiffs complied with the requirements of the Solar Amendments and the Grundy County Code, the county was statutorily obligated to issue the requested special use permits. We affirm that court's issuance of a writ of *mandamus*.

¶ 36        Affirmed.

*Equity Solar Illinois v. County of Grundy*, 2026 IL App (3d) 250289

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Grundy County, No. 24-CH-10; the Hon. Sheldon R. Sobol, Judge, presiding. |
| **Attorneys for Appellant:** | Kurt S. Asprooth, Erin M. Monforti, David S. Silverman, and Jaime C. Such, of Ancel Glink, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Robert Middleton and Meera Gorjala, of Arentfox Schiff LLP, of Chicago, for appellees. |
| *Amici Curiae*: | James A. Murphy, of Mahoney, Silverman & Cross, LLC, of Joliet, for *amici curiae* Village of Channahon *et al*. |